No. 25-30661

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

**TOMAS REY; MELISA REY; ROBERT K. DENNY; VICTORIA EMMERLING; NICOLE WILLIAMSON,**

**PLAINTIFFS-APPELLANTS**

**V.**

**LCMC HEALTH CARE PARTNERS, L.L.C.; LOUISIANA CHILDREN'S MEDICAL CENTER; CHILDREN'S HOSPITAL; LCMC HEALTH HOLDINGS, INCORPORATED,**

**DEFENDANTS-APPELLEES**

---

### On Appeal from
United States District Court for the Eastern District of Louisiana
2:21-CV-1188, BARRY ASHE. PRESIDING

---

## BRIEF OF APPELLANT ROBERT DENNY, VICTORIA EMMERLING, MELISA REY, TOMAS REY, AND NICOLE WILLIAMSON

---

Respectfully submitted:

*/S/Christopher J. Bruno*
Christopher J. Bruno (La. Bar No. 18818)
Christopher J. Bruno, Jr. (La. Bar No. 41177)
**Kiefer & Kiefer**
1100 Poydras Street, Suite 1300
New Orleans, LA 70163
O:    504.828.3313
F:    504.828.0024
cbruno@kieferlaw.com
cbrunojr@kieferlaw.com

AND

*/S/ Joseph M. Bruno*
Joseph M. Bruno (La. Bar No. 3604)
**Bruno & Bruno**
855 Baronne Street
New Orleans, LA 70113
O:    504.525.1335
F:    504.561.6775
jbruno@brunobrunolaw.com

***Attorneys for Plaintiffs/Appellants.***

## I.    CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Christopher J. Bruno #18818
Megan C. Kiefer #32882
Christopher J. Bruno, Jr. #41177
**KEIFER & KEIFER**
1100 Poydras Street, Suite 1300
New Orleans, LA 70163
Telephone: 504.828.3313
Facsimile: 504.828.0024
cbruno@kieferlaw.com
megan@kieferlaw.com
cbrunojr@kieferlaw.com

Joseph M. Bruno #3604
**BRUNO & BRUNO**
855 Baronne Street
New Orleans, LA 70113
Telephone: 504.525.1335
Facsimile: 504.561.6775
jbruno@brunobrunolaw.com

**Attorneys for Plaintiffs-Appellants Tomas Rey, Melisa Rey, Robert Denny, Victoria Emmerling and Nicole Williamson**

Peter J. Rotolo, III  #21848
Amy L. McIntire #35241
A Elyce Ieyoub #39918
**CHAFFE McCALL, LLP**
1100 Poydras Street
2300 Energy Centre
New Orleans, LA  70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
rotolo@chaffe.com
mcintire@chaffe.com
elyce.ieyoub@chaffe.com

**Attorneys for Defendants-Appellees LCMC Healthcare Partners, LLC, Louisiana Children's Medical Center, Children's Hospital, and LCMC Health Holdings, Inc.**

iii

James M. Williams, #26141
Inemesit U. O'Boyle #30007
Matthew A. Sherman #32687
Patrick R. Follette, #34547
Nicholas R. Varisco #33395
CHEHARDY, SHERMAN, WILLIAMS, RECILE & HAYES, L.L.P.
One Galleria Boulevard, Ste. 1100
Metairie, LA   70001
(504) 833-5600
Fax (504) 833-8080
james@thetrialteam.com
matthew.sherman@thetrialteam.com
patrick@thetrialteam.com
inem@thetrialteam.com
nick@thetrialteam.com


**Attorneys for Defendants-Appellees
LCMC Healthcare Partners, LLC,
Louisiana Children's Medical Center,
Children's Hospital, and LCMC Health Holdings, Inc.**


/S/Christopher James Bruno (#18818)
*Attorney of record for Plaintiff-*
*Appellants.*

iv

## II.    <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-Appellants respectfully submit that oral argument would assist the Court in its review. This appeal presents significant and unresolved questions concerning the scope of federal aviation preemption, the proper application of summary-judgment principles, and the continued rile of state nuisance and land-use law in the siting of heliports. Because these issues are not squarely controlled by existing Fifth Circuit precedent and their resolution would benefit from the Court's questions and counsel's clarification, oral argument is warranted.

## III.    TABLE OF CONTENTS

I.    CERTIFICATE OF INTERESTED PERSONS .................................................. iii

II.    STATEMENT REGARDING ORAL ARGUMENT ....................................v

III.    TABLE OF CONTENTS ................................................................ vi

IV.    TABLE OF AUTHORITIES................................................................1

V.    JURISDICTIONAL STATEMENT ...............................................................2

VI.    STATEMENT OF THE ISSUES ................................................................3

VII.    STATEMENT OF THE CASE ................................................................4

VIII.    SUMMARY OF ARGUMENT ................................................................11

IX.    ARGUMENT................................................................12

A.    STANDARD OF REVIEW ................................................................12

B.    THE FAA HAS NOT CHOSEN TO COMPLETY OCCUPY LAND  USE FIELD PREEMPTION. ................................................................12

C.    THE DISTRICT COURT IMPROPERLY WEIGHED TESTIMONY AND  MADE CREDIBILITY DETERMINATIONS. ................................................16

D.    THE FAA'S § 157 AIRSPACE-ANALYSIS PROCESS DOES NOT OCCUPY THE FIELD AND EXPRESSLY PRESERVES STATE AND LOCAL CONTROL OVER HELIPORT LOCATION AND  PROPERTY RIGHTS.................................................................21

E.    THE DISTRICT COURT'S ORDER AND REASONS PRODUCES AN INCONSISTENT OUTCOME: IT WOULD PERMIT A MANDATORY INJUNCTION STOPPING ALL HELICOPTER OPERATIONS YET  BAR A NARROWER INJUNCTION THAT MERLEY REQUIRES  RELOCATION OF THE SOURCE OF THE NUISANCE. ................................................22

X.    CONCLUSION................................................................25

XI.    CERTIFICATE OF SERVICE................................................................28

XII.    CERTIFICATE OF COMPLIANCE ................................................................29

## IV.    TABLE OF AUTHORITIES

**Cases**

*City of Burbank v. Lockheed Air Terminal, Inc*. 411 U.S. 624 (1973)............. 12, 13

*Cliff v. Payco Gen. Am. Credits, Inc*., 363 F. 3d 1113 (11th Cir. 2004) ...................12

*Goodspeed Airport, LLC v. East Haddam Inland Wetlands*, 681 F.Supp.2d 182 (D.C. Conn. 2010) .......................................................................................................14

*Gustafson v. City of Lake Angelus*, 76 F.3d 778 (6th Cir. 1996)............................22

*Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693 (7th Cir. 2005) .............. 15, 16

*Hyman v. Puckett*, 193 So.3d 1184 (La.  App. 4th Cir. 5/4/16)...............................22

*Lewis v. Bell Helicopter Textron, Inc*., 2015 WL 3542887 (S.W. Rptr. 2015)22, 23, 25

*McPherson v. Rankin,* 736 F. 2d 175 (5th Cir. 1984)................................................12

*Pace v. CSX Transp*., Inc. 613 F.3d 1066 (11th Cir. 2010) ............................... 13, 14

*Wood v. City of Huntsville*, 384 So.2d 1081 (Ala. 1980) .................................. 23, 24

**Statutes**

28 U.S.C. § 1292(a)(1)..................................................................................................2

28 U.S.C. § 1331 ...........................................................................................................2

28 U.S.C. § 1453 ...........................................................................................................2

49 U.S.C. § 40101 et seq...........................................................................................2, 4

La. C.C. art. 2315 ..........................................................................................................2

La. C.C. art. 2317 ..........................................................................................................2

La. C.C. art. 659 ..........................................................................................................15

La. C.C. art. 667 .............................................................................................. 15, 22, 25

La. C.C. art. 669 ..........................................................................................................15

La. C.C. arts. 667-669 ..............................................................................................2, 4

**Rules**

Federal Rule of Appellate Procedure 4(a) ..................................................................2

**Regulations**

14 C.F.R. § 157 et seq.......................................... 8, 9, 11, 13, 14, 15, 16, 17, 19, 25

## V.    JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Louisiana had subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1453. Plaintiffs-Appellants Tomas Rey, Melisa Rey, Robert Denny, Victoria Emmerling, and Nicole Williamson asserted claims under La. C.C. arts. 667 through 669 and La. C.C. arts. 2315 and 2317. Defendant-Appellees removed the action to federal court on June 18, 2021, asserting federal-question jurisdiction based on alleged federal preemption under the Federal Aviation Act, 49 U.S.C. § 40101 et seq., and jurisdiction under the Class Action Fairness Act ("CAFA"). The district court denied Plaintiffs-Appellants' motion to remand and exercised subject-matter jurisdiction based on CAFA.

On November 3, 2025, the district court entered an order granting Defendants-Appellees' motion for summary judgment and dismissing Plaintiffs-Appellants' request for a mandatory injunction with prejudice. That order constitutes an interlocutory order denying injunctive relief.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which authorizes immediate review of interlocutory orders granting or denying injunctions. Plaintiffs-Appellants timely filed their Notice of Appeal on November 5, 2025, in accordance with Federal Rule of Appellate Procedure 4(a). This Court has jurisdiction over this appeal.

## VI.    STATEMENT OF THE ISSUES

1. Whether the District Court improperly weighed evidence and made credibility determinations when it concluded that Plaintiff's failed to present any evidence on the approval of the relocation.

2. Whether the District Court erred in holding that Plaintiff's state-law nuisance claim seeking a mandatory injunction to relocate a helipad is preempted by federal aviation law, where the requested relief relates to land use and heliport siting—matters traditionally within local authority—and does not regulate aircraft operations or airspace.

3. Whether the District Court misapplied federal field-preemption principles by concluding that FAA review of flight paths incidental to heliport relocation occupies the field, notwithstanding 14 C.F.R. § 157.7's express provision that FAA approval or disapproval of flight paths "in no way preempts or waives any ordinance, laws, or regulations of any governmental body or agency."

4. Whether the District Court's ruling, as it relates to the availability of a mandatory injunction, results in an inconsistent application of federal preemption by permitting injunctive relief that could halt all helicopter operations while barring injunctive relief requiring relocation of the heliport to abate a state-law noise nuisance, contrary to the FAA's deference to local land-use regulation.

5. Whether the District Court erred by failing to recognize that state and local regulation of heliport siting and land use remains permissible even when such regulation has a tangential impact on airspace use, as recognized in *City of Cleveland v. City of Brook Park*, 893 F. Supp. 742 (N.D. Ohio 1995).

## VII.  **STATEMENT OF THE CASE**

Tomas and Melisa Rey, Robert Denny, Victoria Emmerling and Nicole Williamson ("Plaintiff-Appellants") originally filed this matter as a petition for class certification, injunctive relief and damages in state court on the 7th day of May 2021. Plaintiffs filed a request for a mandatory injunction to force Defendants to relocate the heliport and alternatively, a mandatory injunction to stop the operation of the heliport,[1] pursuant to La. C.C. arts. 667-669.  LCMC Health Care Partners, LLC, Louisiana Children's Medical Center, Children's Hospital, LCMC Health Holdings, Inc., ("Defendant-Appellees") removed this matter to federal court on June 18, 2021, asserting federal question subject-matter jurisdiction based on alleged federal preemption under the Federal Aviation Act ("FAA"), 49 U.S.C. § 40101, et seq., and diversity subject-matter jurisdiction under CAFA. [2]  Plaintiffs filed a motion for remand, which the District Court denied finding that it had subject-matter jurisdiction over the matter based upon CAFA.[3] Defendants filed a motion to strike class action allegations, which was eventually withdrawn following Plaintiffs amended complaint removing those allegations.[4]  Plaintiffs then filed a Motion to Dismiss requesting that the District Court decline continuing supplemental subject-matter jurisdiction due to the dismissal of the class action allegation, which left only

---

[1] ROA. 39-50.
[2] ROA. 24-38.
[3] ROA. 319-328.
[4] ROA. 336-338, 418, 419-422, 423-424, 426.

4

Plaintiffs' state nuisance and injunctive relief claims.[5] At the same time, Defendants filed a Motion for Partial Judgment on the pleadings under federal preemption pursuant to the FAA.[6] The District Court denied Plaintiff's motion to dismiss finding the dismissal of the class action allegations amounted to forum shopping. The Defendants' motion was denied without prejudice to allow additional discovery on the issue.[7] The Defendants filed a Motion to Dismiss claiming that Plaintiffs do not have a state law nuisance claim because the utility of the air ambulance outweighs Plaintiffs' inconvenience related to the noise and vibration from the helicopter.[8] The District Court denied the motion without prejudice pending additional discovery.[9] The parties then filed a Motion to Stay on January 3, 2023, in order to seek a resolution.[10] The matter did not resolve resulting in the filing of a consent motion to lift the stay on December 3, 2024, which was granted.[11] Defendants filed a Motion to Exclude Arno Bommer's Expert Opinions and Testimony and to Bar any Other Expert Testimony and Opinions from Plaintiffs on August 22, 2025.[12] The Defendants also filed a Motion for Summary Judgment

---

[5] ROA. 465-466.
[6] ROA. 479-480.
[7] ROA. 575-582.
[8] ROA. 595-597.
[9] ROA. 734-737.
[10] ROA. 744-746.
[11] ROA. 749-750, 752.
[12] ROA. 819-820.

seeking dismissal of the action under federal preemption.[13]  The District Court granted the motion holding that because the FAA would  have to approve the flight paths if the flight operations were moved to a different location, this is considered an "impingement on airspace that is fatal to Plaintiff's injunction request."[14]

Defendants operated their hospital for many years without utilizing a helicopter.  The need for a permanent heliport came about as a consequence of Hurricane Katrina when the rescue helicopter had to use the parking lot to evacuate patients. [15]   Defendants were looking for a permanent location for future evacuations,[16] and engaged Heliport Systems, Inc., to perform a feasibility study for the development and construction of a heliport in 2006.[17]

The feasibility study considered three different locations for the new heliport: roof of the West Tower, roof of Main Patient Tower, and roof of Operating Wing.[18] Heliport Systems, Inc. and the Defendants chose the Roof of the Operating Wing because it had the least noise impact on the neighborhood.[19]  Defendants operated from the Roof of the Operating Wing for eight years without any complaints from the neighborhood.[20]  The decision to relocate the helipad to a new location was filled

---

[13] ROA. 1023-1024.
[14] ROA. 3272-3314.
[15] ROA. 2583.
[16] ROA. 2583.
[17] ROA. 2024:18-19.
[18] ROA. 2137-2142.
[19] ROA. 2137-2142.
[20] ROA. 2511:2-5.

with false information and began as early as 2018 with discussions about the costs of getting fuel to the roof of the infill tower.[21]  Without moving the fuel tanks or finding a way to pipe the fuel to the new location, the option to relocate was dead in the water.[22]  Mr. Bertucci recommended piping the fuel from the old location to the top of the infill tower. [23]   Because the infill tower had been permitted and construction  had begun without including the helipad, Warren M. Umbach, III advised that the structure would need reinforcement to support the weight of the pad and the helicopter.[24]  Defendants asked Bill Davis with Heliport Systems, Inc., to build fuel tanks for the new location.[25]   Adding a fueling system for a helipad changes its classification to a heliport. Defendants realized that a heliport was considered a conditional use under New Orleans Zoning Ordinance, so they decided to build it without engaging in a conditional use application, which requires public involvement.[26]  The City of New Orleans confirmed that the heliport had been constructed without the required permits.  In an email to Scott Landry, Zachary Smith noted, "Thanks for working with Jay today.  I have to ask, is there a reason that this was built and not permitted properly."[27]  Defendants were also  fully aware,

---

[21] ROA. 2143-2150.
[22] ROA. 2143-2150.
[23] ROA. 2144.
[24] ROA. 2149.
[25] ROA. 2043:22-2044:7.
[26] NO Comprehensive Zoning Ordinance 15.2 A and 4.3 B; ROA. 2000:8-2001:12.
[27] ROA. 2983.

before relocating the heliport, that the noise would pose a problem for the surrounding neighborhood, yet they misrepresented their prior knowledge of this issue.[28]    John Nickens received an email from Ben Whitworth, AVP, Hospital Operations, wherein Mr. Whitworth tells Mr. Nickens ". . . one other thing that the team brought up to me is the additional noise that will be created for the neighborhood . . ."[29]  Defendants began operations from the new heliport on May 18, 2020.[30]

Defendants, prior to receiving flight path approval from the FAA, "Eliminated FAA approved instrument flight path . . . [r]einforced the primary east and west flight paths . . ."[31]    Defendants were using north, south, southeast and southwest flight paths between 5/18/2020-6/4/2020.[32]    Flight paths were changed by Defendants on June 5, 2020, to only include southeast and southwest.[33]  Defendants, after the heliport was completed and in use, received a conditional no objection from the FAA pursuant to 14 C.F.R. § 157, et seq., on January 15, 2021.[34]  The FAA determined that the "aeronautical study has determined that the private use heliport will not adversely affect the safe and efficient use of airspace . . ." subject to a

---

[28] ROA. 2381-2390.
[29] ROA. 2391-2395.
[30] ROA. 2314-2380.
[31] ROA. 2372.
[32] ROA. 2373-2375
[33] ROA. 2373-2375.
[34] ROA. 2979-2982.

number of conditions.[35]    Defendant-Appellee did not offer any evidence that it addressed the conditions.    The FAA's involvement in flight paths is limited to assessing whether any airspace hazards exist, such as obstructions or nearby airports.[36]  The FAA placed an annual requirement on LCMC that:

> The heliport proponent should reexamine obstacles in the vicinity of the approach/departure paths on an annual basis in accordance with AC 150-5390-2, any new obstacles noted will be forward to the local Airport District Office or the Flight Procedures and Airspace Group, 817-222-5338.[37]

The District Court relied upon the testimony of Keith Cianfrani to support its preemption ruling.   Mr. Cianfrani, who testified that he had never worked on a helicopter project involving  hospitals, falsely represented that he had performed work on helicopter projects for various hospitals in a letter written to the Skagway Assembly in February of 2021.[38]  Mr. Cianfrani testified that a flight path evaluation by the FAA involves making sure the flight path "doesn't interfere with any other hazard . . . whether it be a tower, other traffic and another airport . . .".[39]  Mr. Cianfrani agreed that the determination under 14 C.F.R. § 157 does not preempt state laws on nuisance.[40]   Mr. Cianfrani writes in his report that approval under § 157 is

---

[35] ROA. 2979-2982.
[36] 14 C.F.R.§ 77, et seq.
[37] ROA. 2979-2982.
[38] ROA. 2866:17-2868:3.
[39] ROA. 2942:21-25.
[40] ROA. 2923:17-23.

not guaranteed.[41]    The District Court relied heavily upon this "no guarantee" language to conclude that because the FAA would have to determine hazards to airspace, "this impingement on airspace . . . is fatal to Plaintiffs' injunction request."[42]  The regulation specifically states that:

> A determination does not relieve the proponent of responsibility for compliance with any local law, ordinance or regulation, or state or other Federal regulation. Aeronautical studies and determinations will not consider environmental or land use compatibility impacts.[43]

Bill Davis testified that the FAA's flight-path approval functions as a recommendation, and that a pilot is permitted to deviate from the approved flight path if conditions warrant it.[44]  He described the FAA approval process as pro forma, which utilizes boilerplate language.[45]  Mr. Bertucci testified that the primary flight path was north, with the secondary being southeast and southwest, but the pilots have the final determination when landing.[46]  Mr. Davis, like Mr. Bertucci,[47] testified that the FAA does not regulate noise from take-offs or landings.[48]  The landings and take-offs are relegated to local control regarding the siting of heliports.[49]  Mr. Davis stated that Mr. Bertucci accepted his recommendation to change the flight paths to

---

[41] ROA. 1139.
[42] ROA. 3272-3314.
[43] 14 C.F.R. §157.7
[44] ROA. 2026:18-25.
[45] ROA. 2025:19-25.
[46] ROA. 2518.
[47] ROA. 2493:13-17.
[48] ROA. 2090:2-5.
[49] ROA. 2080:13-2081:3.

southeast/southwest.[50]   Mr. Davis testified that the FAA should have been notified about the flight path change, but there is no evidence that this occurred.[51]   Mr. Davis had a phone call with Mr. Bertucci in 2025, wherein Mr. Bertucci admitted to him that the old location still has good access to patient care.[52]   Mr. Davis stated that there is no reason the hospital could not return to the old heliport, utilizing the established "flight paths to the maximum extent feasible consistent with safety."[53]

## VIII.  SUMMARY OF ARGUMENT

The District Court erred in concluding that Plaintiffs' claims are preempted by federal aviation law and in resolving disputed factual issues. Although Congress has vested the FAA with exclusive authority over navigable airspace and aircraft operations, it has not occupied the field of land use, heliport siting, or state-law limitations on property rights, and the FAA's § 157 airspace-analysis process is expressly advisory and preserves compliance with state and local law. Plaintiffs' claims arise under Louisiana nuisance and servitude law, which directly regulate an owner's obligation to use his property in a manner that does not disturb a neighbor's peaceful possession and enjoyment of their property, and are directed at the ground-level location of the heliport and its resulting noise—not the regulation of flight paths or airspace. In reaching the opposite conclusion, the District Court relied on

---

[50] ROA. 2095:22-2096:6.
[51] ROA. 2096:1-6.
[52] ROA. 2100:6-12.
[53] ROA. 2100.

*Lewis v. Bell Helicopter Textron, Inc.*, 2015 WL 3542887 (S.W. Rptr. 2015) an unreported decision addressing an attempted injunction of federally regulated flight paths, relief fundamentally different from the relocation of a heliport on private land sought here. The District Court further improperly weighed conflicting testimony and made credibility determinations concerning the feasibility and safety of relocation, despite substantial evidence creating genuine issues of material fact. Finally, the ruling produces an inconsistent outcome by permitting an injunction that could halt all helicopter operations while barring a narrower, less intrusive injunction requiring relocation of the source of the nuisance, relief long recognized under Louisiana law and not barred by federal preemption.

## IX. ARGUMENT

### A. STANDARD OF REVIEW

A District Court is not permitted to weigh evidence or make credibility determinations in deciding a motion for summary judgment and must consider the facts in a light most favorable to the non-moving party. *McPherson v. Rankin,* 736 F. 2d 175, 178 (5th Cir. 1984). Appellate review of district court grant of a summary judgment conclusion that federal law preempts a state law claim are reviewed *de novo*. *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F. 3d 1113, 1121 (11th Cir. 2004).

### B. THE FAA HAS NOT CHOSEN TO COMPLETY OCCUPY LAND USE FIELD PREEMPTION.

12

In *City of Burbank v. Lockheed Air Terminal, Inc*. 411 U.S. 624, 626 (1973), the court recognized that "[t]he Federal Aviation Act of 1958, 72 Stat. 731, 49 U.S.C. §1301, et seq., as amended by the Noise Control Act of 1972, 86 Stat. 1234, and the regulations under it . . . are central to the question of preemption."  The court citing the Federal Aviation Act, 49 U.S.C. § 1508(a), held:

> 'The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States . . .' By ss 307(a), (c) of the Act, 49 U.S.C. ss 1348(a), (c), the Administrator of the Federal Aviation Administration (FAA) has been given broad authority to regulate the use of the navigable airspace, 'in order to insure the safety of aircraft  and the efficient utilization of airspace . . .' and 'for the protection of persons and property on the ground . . ..' *Id.* at 626-27.

The District Court concluded that Plaintiff's state law claims were preempted under "field preemption."[54]  The *Pace v. CSX Transp*., Inc. 613 F.3d 1066, 1068 (11th Cir. 2010) explained field preemption:

> If Congress does not explicitly preempt state law, however, preemption still occurs when federal regulation in a legislative field is so pervasive that we can reasonably infer that Congress left no room for the states to supplement it, known as field preemption.

The District Court relies upon 49 U.S.C. § 40103(b)(1), to support its field preemption conclusion, which charges the FAA administrator with "develop[ing] plans and policy for the use of the navigable airspace and assign[ing] by regulation

---

[54] ROA. 3302.

or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace."[55]   The FAA promulgated 14 C.F.R. § 157, et seq. pursuant to § 40103(a)(1) to perform a "airport airspace analysis" once it receives notice of an intent to "[c]onstruct or otherwise establish a new airport or activate an airport." § 157.3 (a).   The analysis under § 157.7, considers:

> [T]he effects the proposed action would have on the existing airspace structure and projected programs of the FAA; and the effects that existing or proposed manmade objects (on file with the FAA) and natural objects within the affected area would have on the airport proposal.

> While determinations consider the effects of the proposed action on the safe and efficient use of airspace by aircraft and the safety of persons and property on the ground, **the determinations are only advisory**.

There is no basis to infer from this legislation that the FAA regulations "left no room for states to supplement it…" *Pace*, 613 F.3d at 1068.   The *Goodspeed Airport, LLC v. East Haddam Inland Wetlands*, 681 F.Supp. 2d 182, 195 (D.C. Conn. 2010) noted that:

> The airport airspace analysis results in a "determination" of the proposal—either "no objection," "conditional," or "objectionable"— but no matter the outcome of the analysis, the regulation is explicit that "[a] determination does not relieve the proponent of responsibility for compliance with any local law, ordinance or regulation, or state or other Federal regulation. Aeronautical studies and determinations will not consider environmental or land use compatibility impacts."

---

[55] ROA. 3301.

14

The District Court concludes that "this case does not involve a state or local ordinance regarding the siting or location of a helipad."[56]  The location of the heliport, with its concomitant disturbing noises from take-offs and landings, infringes upon Plaintiffs' legal servitude, which places ". . . limitations on ownership established by law for the benefit of . . . particular persons." La. C.C. art. 659.  La. C.C. arts. 667-669 place limitations on an owner's use of property to not ". . . deprive his neighbor of the liberty of enjoying his own . . ." property or to avoid work, which creates "an inconvenience to those in the same or in the neighboring houses . . ." La. C.C. arts. 667 and 669.  Plaintiffs' claims arise from Defendants' abuse of its property rights.  The language in § 157, et seq., saves this type of claim by telling owners of heliports that "[a] determination does not relieve the proponent of responsibility for compliance with any local law, ordinance or regulation, or state or other Federal regulation." 14 C.F.R. § 157.7.

In *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 695 (7th Cir. 2005), the court addressed the location of a heliport on private property.  Hoagland, the plaintiff, constructed a heliport on his property to provide an easier and quicker way to his business. *Id.* at 696.  The town of Clearlake sued him arguing that his takeoffs and landings were a "public nuisance." *Id*. The parties entered into a mediation where Hoagland agreed to comply with restrictions on his helicopter operations. *Id*.

---

[56] ROA. 3303.

Subsequent to the agreement the town amended an existing ordinance to classify an "'[a]ircraft landing strip, pad, or space' as a 'special use' requiring special permission of the Zoning Board of Appeals." *Id.* The issue on appeal was whether the zoning ordinance was preempted by the Federal Aviation Act. *Id.* Hoagland argued that the FAA rendered an Airspace Determination in favor of his helicopter operations. *Id.* at 697. The court found the ordinance was "land use, or zoning, ordinance, not a flight pattern regulation." *Id.* The court, in finding that the ordinance related to land use, quoted from the FAA's Airspace Determination letter, which read in part:

> The FAA cannot prevent the construction of structures near a heliport. The heliport environs can only be protected through such means as local zoning ordinances or acquisitions of property rights.

> This determination in no way preempts or waives any ordinances, laws, or regulations of any government body or agency. *Id.* at 699.

Accordingly, because Plaintiffs' claims arise from traditional state law limitations on land use and property rights-an area the FAA has expressly declined to occupy-there is no field preemption.

## C. THE DISTRICT COURT IMPROPERLY WEIGHED TESTIMONY AND MADE CREDIBILITY DETERMINATIONS.

The District Court gave great weight to the testimony of Keith Cianfrini, Defendants' safety expert, who opined that relocating the heliport to its old location would require a new airspace analysis by the FAA under 14 C.F.R. § 157, et seq.,

and approval would not be guaranteed ". . . because the [old heliport] has been decommissioned for five years and flight paths, airspace use, and obstructions in the area could have changed in the interim."[57]   Mr. Cianfrini disagreed with Metro Aviation, the entity that operates Defendants' helicopters, who opined that "we all believe that operations to the [old] pad are being done safely and the pad will continue to serve adequately."[58]   Metro told Mr. Bertucci in June of 2020, after the new pad was operational, that "we were able to use either as it was hospital admin that decided to close the old pad, it was not safety of use related."[59]   As late as June 10, 2024, Metro was still advising Defendants that the old heliport was safe.[60]   Mr. Cianfrini, who visited the hospital on June 24, 2025, and who took pictures of the old and new heliport and the surrounding area, testified that "maybe another building was put up."[61]   Mr. Cianfrani's photographs establish the non-existence of airspace obstructions.[62]   Mr. Davis, discussing his feasibility study for the old heliport, noted that flight paths should extend toward the south over the levee and river to avoid residential areas if possible.[63]   The final route is up to the pilot, which depends upon the winds.[64]   Heliport Systems, Inc., in its application to the FAA pursuant to § 157,

---

[57] ROA. 3304.
[58] ROA. 2306.
[59] ROA. 2308-2313.
[60] ROA. 2308-2313.
[61] ROA. 2920:21.
[62] ROA. 1143-1151.
[63] ROA. 2012, 2136-2141.
[64] ROA. 2015.

et seq., recommended east and west fight paths.[65] The application was modified to include a north instrument approach route.[66] Mr. Davis explained that the FAA's determination analysis is a pro forma process utilizing "boilerplate language, such as that the flight paths have to meet the obstruction clearance slope of eight to one . . .".[67] Defendants approved the old heliport location because it had the least noise impact on the adjacent neighborhood.[68] Heliport Systems, Inc., was also hired to design the new heliport, to allow refueling, maintenance and overnight stationing.[69] The FAA application was filed in 2020.[70] Mr. Davis described the process, which includes making sure the flight paths selected "don't conflict with flight paths from the other airports or heliports," and no obstructions such as "tall television broadcasting antennas . . ."[71] Mr. Davis described the assessment as ensuring that the flight paths are safe for the pilot and people on the ground.[72] He stated that the FAA does not mandate where a helicopter can land and take-off, adding:

> As long as you have the -- you meet all their standards for the helipad itself, the obstruction for areas around it, the two flight paths, the pavement, the lighting, the markings on the pad, as long as you meet all of their standards, they will -- they have to approve it.[73]

---

[65] ROA. 2059:16-2060:6.
[66] ROA. 2060: 7-13.
[67] ROA. 2025:22-25.
[68] ROA. 2137-2142. (Defendants were part of the feasibility committee).
[69] ROA. 2043:25-2044:4.
[70] ROA. 2062:24-25.
[71] ROA. 2071:18-25.
[72] ROA. 2080:8-12.
[73] ROA. 2089:17-2090:1.

18

Mr. Davis testified that he had a conversation with Mr. Bertucci prior to his deposition in 2025, at which time they discussed returning to the old heliport.[74]   Mr. Bertucci told him that the old heliport still has good access for patient care.[75] Further, Mr. Davis told Mr. Bertucci that there was no reason why they could not go back to the old location "to the maximum level feasible consistent with safety."[76] Scott Landry told Mr. Davis on the phone call that they were "building an atrium for the families . . ." but it had not been built yet.[77]   The flight path for the new heliport is southwest and southeast with a northern instrument flight path, which is the same flight path that was used at the old heliport.   The District Court accepted the testimony of Mr. Cianfrini even though he has never designed, planned or constructed a heliport facility nor has he ever worked with the FAA to determine airspace compliance.[78]   He never prepared a § 157, et seq., application and has never worked with designers or contractors to determine whether the heliport design follows the FAA standards and building codes.[79]   Defendants' "Pediatric Critical Care Air Transport" brochure depicts the flight paths before the new heliport was operational and after.[80]   The flight paths for the new heliport were changed to

---

[74] ROA. 2095.
[75] ROA. 2100:6-16.
[76] ROA. 2100:16-20.
[77] ROA. 2101:12-23.
[78] ROA. 2881:14-16 and 2862:14-17.
[79] ROA. 2889.
[80] ROA. 2372-2375.

19

southeast and southwest, the same as the old heliport.[81]  The flight paths before the relocation were southeast, southwest and north.[82]  The flight paths from May 18, 2020, to June 4, 2020 were east west and north.[83]  Finally, when the flight paths for the new heliport were changed to southeast and southwest they matched the flight paths for the old heliport.[84]  Mr. Cianfrini's photographs do not depict any obstructions to navigation utilizing the southeast and southwest flight paths.[85]  The FAA does not "approve" or prescribe specific flight paths; it's review is limited to identifying potential airspace obstructions that might require pilots to adjust their routes.[86] That review is based on flight paths proposed by the heliport owner and results only in an obstruction determination, not the selection or imposition of routes. Additionally, the FAA's approval mandates that owners of heliports ". . . should reexamine obstacles in the vicinity of the approach/departure paths on an annual basis . . .".[87]  No such evidence was introduced because there are no obstacles to the southeast or southwest flight paths.

Plaintiffs offered countervailing evidence that not only contradicts Mr. Cianfrini's testimony but establishes that relocating the heliport to its old location

---

[81] ROA. 2372-2375.
[82] ROA. 2372-2375.
[83] ROA. 2372-2375.
[84] ROA. 2372-2375.
[85] ROA. 1143-1151.
[86] ROA. 2089:16-2090:1.
[87] ROA. 2979-2982.

would not interfere with federal airspace.  There are material issues of fact in dispute warranting the reversal of the District Court.

**D.    THE FAA'S § 157 AIRSPACE-ANALYSIS PROCESS DOES NOT OCCUPY THE FIELD AND EXPRESSLY PRESERVES STATE AND LOCAL CONTROL OVER HELIPORT LOCATION AND PROPERTY RIGHTS.**

Bill Davis's company, Heliport Systems, Inc., designed Defendants' new heliport and engaged with the FAA to ensure that the flight paths selected would not interfere with federal airspace.[88]   Mr. Davis was asked to design a heliport, which allows fueling, maintenance and parking overnight.[89]   Defendants made it clear to Mr. Davis that they wanted a heliport, which is a conditional use under the New Orleans Comprehensive Zoning Ordinance, requiring public input.[90]   Instead of engaging the neighbors, Defendants built the heliport without a permit.[91] Defendants ultimately disconnected the fuel lines and applied for a permit to operate a helistop, which was retroactively granted.[92]   Plaintiffs, in their original petition for damages in state court, requested a mandatory injunction seeking to stop the helicopter operations and an alternative request to relocate the heliport to its original location.[93]   The District Court held that Plaintiffs' nuisance injunction is preempted

---

[88] ROA. 2041:2-17.
[89] ROA. 2000 and ROA. 2043:1-2045:9.
[90] ROA. 2046:20-2047:7.
[91] ROA. 2983.
[92] ROA. 2050:3-7.
[93] ROA. 39-50.

but their nuisance damage claim is not.[94]    The District Court focuses on the relocation vis a vis the flight paths rather than the movement of a heliport, which will have no effect on the flight paths.[95]  Plaintiffs have never argued that there would be "minimal change to the flight paths," nor have they suggested that the FAA "will likely allow a helipad relocation."[96]    The FAA would not be involved with the movement of the heliport to its old location since that involves local land control. The FAA would only disapprove if the chosen flight path interfered with an airspace obstruction, which we know does not exist.   The placement of heliports is a matter for local control.  *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 784 (6th Cir. 1996). Plaintiffs are seeking a mandatory injunction to eliminate a noise nuisance under La. C.C. art. 667, which provides that an owner has the right to ". . . do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own . . ." La. C.C. art. 667.   This claim arises from land use.

**E.    THE DISTRICT COURT'S ORDER AND REASONS PRODUCES AN INCONSISTENT OUTCOME: IT WOULD PERMIT A MANDATORY INJUNCTION STOPPING ALL HELICOPTER OPERATIONS YET BAR A NARROWER INJUNCTION THAT MERLEY REQUIRES RELOCATION OF THE SOURCE OF THE NUISANCE.**

---

[94] ROA. 3301-3302.
[95] ROA. 3302.
[96] ROA. 3304.

22

Under Louisiana Law a mandatory injunction "is one that requires a party to perform a specific act." *Hyman v. Puckett*, 193 So.3d 1184, 1189 (La. App. 4th Cir. 5/4/16). Louisiana Law does not limit the type of act. The District Court's ultimate decision seems to rely upon the *Lewis v. Bell Helicopter Textron, Inc.*, supra case, an unreported decision, for the proposition that a mandatory injunction cannot compel the relocation of a heliport that was illegally built and which has created an ongoing noise nuisance. *Lewis, supra* does not support preemption. Bell, operated a training academy in Texas adjacent to residential homes. *Lewis*, 2015 WL 3542887, at *1. The Lewis's sought an injunction to force Bell to change its flight paths, which were causing a nuisance. *Id.* Bell claimed that the injunction filed by the Lewis's was preempted under "field preemption" claiming that FAA's Airspace Determination under 14 C.F.R. § 157, et seq. "showed that Congress intended to occupy the field of managing and regulating flight paths in U.S. airspace." *Id*. at *7. The *Lewis, supra* court concluded that the evidence produced by Bell established that the "flights occurred in airspace regulated by the federal government . . . thus, that a trial court order enjoining a particular flight path in that airspace would be regulating in the field occupied exclusively by the federal government." *Id.* The Lewis' were not seeking to relocate or stop the operation of the heliport. *Id*. at *2. Rather, there claim solely related to altering the flight path. *Id*. Plaintiffs are not seeking to enjoin a flight path. Plaintiffs' position is consistent with the facts of

23

*Wood v. City of Huntsville*, 384 So.2d 1081 (Ala. 1980) which the *Lewis, supra* court distinguished on the basis that "*Wood* had to do with the location of a heliport on the ground, not the location of aircraft in the sky." *Id*. at *7. *Lewis, supra* does not stand for the proposition that a court cannot order the relocation of a heliport.

In *Wood, supra*, Dr. Wood built a helipad on top of his home in Huntsville, which he used for commuting purposes and transporting emergency patients. *Wood*, 384 So.2d at 1082. He obtained a permit for construction of the helipad as well as FAA approval for taking off and landing. *Id*. The City of Huntsville filed an injunction action because it alleged Dr. Wood was violating a local zoning ordinance. *Id*. The trial court determined that the city was not the proper party to bring the action, which belonged to neighbors who complained about the noise from the helicopter operations. *Id*. Dr. Wood's neighbors filed a separate lawsuit for injunctive relief alleging that the helicopter operations from his property created a nuisance and violated the City of Huntsville ordinance and local subdivision covenants. *Id*. at 1083. The trial court granted injunctive relief prohibiting Dr. Wood from operating his helicopter from his helipad. *Id*. Dr. Wood appealed arguing that the FAA preempts local control of aircraft noise. *Id*. The *Wood* court stated in part:

> The case at hand does not present a situation where preemption may be predicated upon a felt need for a monolithic system of regulation. While in some important aspects uniform regulation may be required, 1181 such as in the control and supervision of air space, Cf. 447 *Burbank v. Lockheed Air Terminal, Inc*., 411 U.S. 624, 626-628, 93 S.Ct. 1854, 1856-1857, 36 L.Ed.2d 547, 550 (1973), that obvious need does not

24

reach down to the level of the location of small, relatively isolated, privately owned helistops or heliports. Cf. *Cooley v. Bd. of Wardens of the Port of Phila., supra*, 53 U.S. (12 How.) at 320, 13 L.Ed. at 1005.[97]

The *Wood, supra* court affirmed the trial court's injunction action finding that the neighbors noise nuisance claim was not preempted by federal law. *Id*. at 1085. Accordingly, because Plaintiffs seek relief directed at the ground-level location of the heliport-the source of the nuisance-and not the regulation of federal airspace, neither *Lewis*, *supra* nor federal preemption bar a mandatory injunction requiring relocation, and the District Court's contrary conclusion was in error.

## X.   CONCLUSION

The District Court's grant of summary judgment rests on a fundamental misapplication of federal preemption doctrine and an improper weighing of disputed evidence. Federal aviation law does not occupy the field of local land use, zoning, or nuisance law, and nothing in the FAA's airspace-analysis framework under 14 C.F.R. § 157 reflects congressional intent to displace state-law remedies addressing the placement of a heliport on the ground. To the contrary, FAA regulations expressly preserve the applicability of state and local law, and federal courts have repeatedly recognized that heliport siting and noise nuisance claims remain matters of local concern.

---

[97] *Id.* (citing *Garden State Farms, Inc. v. Bay*, 77 N.J. 439, 390 A.2d 1177 (1978) (holding that local regulation of the location of helipads is not preempted by federal law).

This case does not seek to regulate flight paths, aircraft operations in navigable airspace, or pilot conduct. Plaintiffs seek a mandatory injunction grounded in La. C.C. art. 667 to abate an ongoing land-use nuisance by relocating a heliport to its prior, less intrusive location. Such relief falls squarely within traditional state police powers and does not intrude upon any field occupied exclusively by the federal government. The District Court's attempt to recharacterize this claim as an impermissible regulation of airspace ignores both the substance of Plaintiffs' request and controlling precedent distinguishing land-use regulation from airspace control.

Equally problematic, the District Court resolved genuine disputes of material fact by crediting the speculative testimony of Defendants' safety expert while disregarding substantial countervailing evidence demonstrating that relocation of the heliport would not interfere with federal airspace. At the summary judgment stage, the court was not permitted to weigh testimony, draw inferences against the non-moving party, or make credibility determinations. Those errors alone require reversal.

Finally, the District Court's ruling produces an inconsistent and untenable result: a court may enjoin all helicopter operations without offending federal law yet may not order the relocation of an unlawfully sited heliport as a narrower and less intrusive remedy. Federal preemption doctrine does not compel—nor does it tolerate—such an outcome.

26

Because federal law does not field-preempt Plaintiffs' nuisance claim and because material issues of fact remain in dispute, the judgment of the District Court should be reversed and this matter remanded for further proceedings.

Respectfully submitted:

*/S/Christopher J. Bruno*
Christopher J. Bruno (La. Bar No. 18818)
Christopher J. Bruno, Jr. (La. Bar No. 41177)
**Kiefer & Kiefer**
1100 Poydras Street, Suite 1300
New Orleans, LA 70163
O:    504.828.3313
F:    504.828.0024
cbruno@kieferlaw.com
cbrunojr@kieferlaw.com

AND

*/S/ Joseph M. Bruno*
Joseph M. Bruno (La. Bar No. 3604)
**Bruno & Bruno**
855 Baronne Street
New Orleans, LA 70113
O:    504.525.1335
F:    504.561.6775
jbruno@brunobrunolaw.com

*Attorneys for Plaintiffs/Appellants.*

## XI.    CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon counsel for all parties to this proceeding as identified below through the Court's electronic filing system as follows:

Peter J. Rotolo, III (La. Bar No. (21848)
Amy L. McIntire (La. Bar. No. 35241)
A Elyce Ieyoub (La Bar No. 39918)
**CHAFFE McCALL, LLP**
1100 Poydras Street
2300 Energy Centre
New Orleans, LA  70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
rotolo@chaffe.com
mcintire@chaffe.com
elyce.ieyoub@chaffe.com

**Attorneys for Defendants-Appellees LCMC Healthcare Partners, LLC, Louisiana Children's Medical Center, Children's Hospital, and LCMC Health Holdings, Inc.**

New Orleans, Louisiana, this 6th day of February, 2026.

*/S/Christopher James Bruno*
**Christopher J. Bruno**

28

## XII.   CERTIFICATE OF COMPLIANCE

**1.** This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 5,893 words.

**2.**   This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word 2025 in 14-point font size and Times New Roman type style.

/S/Christopher J. Bruno
**Christopher J. Bruno**
*Attorney for Plaintiffs/Appellants.*
February 6, 2026